UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RAY L. PALMER,

      Plaintiff,

v.                                                                  Case No. 1:21-cv-236
                                                                    Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant,

_____/

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) which denied his application for disability insurance benefits (DIB).

On July 15, 2019, plaintiff filed an application for DIB alleging a disability onset date of February 15, 2019.  PageID.52.  Plaintiff identified his disabling conditions as chronic obstructive pulmonary disease (COPD), low back pain, hypertension, gastroesophageal reflux disease (GERD), and panlobular emphysema.  PageID.244.  Prior to applying for DIB, plaintiff completed the 12th grade and had past relevant work as a carpenter, maintenance mechanic, and cabinet maker.  PageID.60.  An administrative law judge (ALJ) reviewed plaintiff's application de novo and entered a written decision denying benefits on September 29, 2020.  PageID.52-62.  This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

1

.       I.      **LEGAL STANDARD**

"The federal courts review the Commissioner's factual findings for substantial evidence and give fresh review to its legal interpretations." *Taskila v. Commissioner of Social Security*, 819 F.3d 902, 903 (6th Cir. 2016).  This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence.  42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990).  "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154 (2019).  "Substantial evidence, this Court has said, is more than a mere scintilla.  It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotation marks and citations omitted).

A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health and Human Services*, 925 F.2d 146 (6th Cir. 1990).  The scope of this review is limited to an examination of the record only.  This Court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).  The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988).  "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II.     ALJ's DECISION

Plaintiff's application for DIB failed at the fifth step of the evaluation.  At the first step, the ALJ found that plaintiff meets the insured requirements of the Social Security Act through December 31, 2023, and has not engaged in substantial gainful activity since the alleged onset date of February 15, 2019.  PageID.54.  At the second step, the ALJ found that plaintiff had severe impairments of COPD/emphysema, obstructive sleep apnea (OSA), and obesity.  *Id*.  At the third step, the ALJ found that plaintiff does not have an impairment or combination of impairments that meet or equal the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  PageID.55.

The ALJ decided at the fourth step that:

After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that he may never climb ladders, ropes, or scaffolds; and may only occasionally climb ramps or stairs. Claimant may occasionally stoop, kneel, crouch, or crawl; and has no limits on balancing. Claimant must avoid all exposure to extremes of cold and heat; and may have no more than occasional exposure to fumes, dusts, gases, odors, poor ventilation, and humidity. Claimant may have occasional exposure to unprotected heights and dangerous moving machinery.

PageID.56.  The ALJ also found that plaintiff is unable to perform any past relevant work. PgeID.60.

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled jobs at the light exertional level.  PageID.61-62.  Specifically, the ALJ found that plaintiff could perform the requirements of unskilled, sedentary work in the national economy such as information clerk (50,000 jobs), new account clerk (50,000 jobs), and document preparer (40,000 jobs).  *Id*.  Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from February 15, 2019 (the alleged disability onset date) through September 29, 2020 (the date of the decision).  PageID.62.

4

### III.   DISCUSSION

Plaintiff has raised three errors on appeal.

**A. The Social Security Administration (SSA) did not meet its burden at step five of the sequential evaluation.**

Plaintiff contends that the ALJ made no determination that plaintiff is capable of making a successful adjustment to substantial gainful work which exists in the national economy as defined in 42 U.S.C. § 423(d) and 20 C.F.R. § 404.1505.  Plaintiff contends that the "ALJ simply found that "the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy" (PageID.61) and that "[s]uch a determination is insufficient to withhold a finding of disability under the Social Security Act because the ALJ made no determination as to whether the jobs that exist in the national economy would rise to the level of substantial gainful work, as required by statute and regulation."  Plaintiff's Brief (ECF No. 13, PageID.706-707).

The definition of disability appears in 42 U.S.C § 423 which states in pertinent part,

> (1) The term "disability" means -- (A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A).  The cited regulation, 20 C.F.R. § 404.1505 provides in relevant part,

> The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. To meet this definition, you must have a severe impairment(s) that makes you unable to do your past relevant work (see § 404.1560(b)) or any other substantial gainful work that exists in the national economy. If your severe impairment(s) does not meet or medically equal a listing in appendix 1, we will assess your residual functional capacity as provided in §§ 404.1520(e) and 404.1545. (See §§ 404.1520(g)(2) and 404.1562 for an exception to this rule.) We will use this residual functional capacity assessment to determine if you can do your past relevant work. If we find that you cannot do your past relevant work, we will use the same residual functional capacity assessment

and your vocational factors of age, education, and work experience to determine if you can do other work. (See § 404.1520(h) for an exception to this rule.) We will use this definition of disability if you are applying for a period of disability, or disability insurance benefits as a disabled worker, or child's insurance benefits based on disability before age 22 or, with respect to disability benefits payable for months after December 1990, as a widow, widower, or surviving divorced spouse.

20 C.F.R. § 404.1505(a).

As discussed, *supra*, the ALJ followed this procedure.  Specifically, an ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987).  This evidence may be produced through the testimony of a VE in response to a hypothetical question which accurately portrays the claimant's physical and mental limitations. *See Webb v. Commissioner of Social Security*, 368 F.3d 629, 632 (6th Cir. 2004); *Varley*, 820 F.2d at 779.  Here, the ALJ obtained testimony from VE Paul Delmar that plaintiff could perform other work in the national economy. *See* discussion in § III.C., *infra*. Accordingly, plaintiff's claim of error is denied.

> **B. The ALJ's residual functional capacity (RFC) determination was unsupported by substantial evidence because the ALJ failed to consider the plaintiff's time-consuming use of a nebulizer machine for breathing treatments multiple times during the day.**

RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments.  20 C.F.R. § 404.1545.  The ALJ is "charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of her residual functional capacity." *Webb v. Commissioner of Social Security*, 368 F.3d 629, 633 (6th Cir. 2004) (internal quotation marks and brackets omitted).  Here, plaintiff points out that his use of a

6

nebulizer is uncontroverted, stating that the ALJ referenced "albuterol" twice in the decision (PageID.57) and "inhaler" 11 times (PageID.57-58).  Plaintiff's Brief at PageID.708.  Despite this, the ALJ failed to address plaintiff's use of a nebulizer machine to administer the albuterol:

> The ALJ acknowledges that Mr. Palmer used albuterol, but she made no reference to the fact that Mr. Palmer's albuterol is administered with a nebulizer machine. The record clearly states Mr. Palmer uses a nebulizer machine to administer albuterol. In fact, Mr. Palmer testified extensively about his use of nebulizer treatments. PageID.82-84. The use of a "Nebulizer machine" with mask and tubing as a medical supply order, while referring to albuterol administration as "[t]ake 2.5mg by nebulization every 6 hours as needed" is noted at PageID.396, 397, and 398. . . .

> Mr. Palmer testified that preparing, using, and cleaning the nebulizer machine can take about 35 minutes per use. PageID.83. This limitation was not contained within the ALJ's RFC. Mr. Palmer testified that he uses his nebulizer between two and six times per day. PageID.83. . .

Plaintiff's Brief at PageID.708-709.  In this regard, plaintiff testified that it takes less than five minutes to set up the machine, 20 minutes for the treatment, and 10 minutes to clean it.  PageID.83. The ALJ addressed this process in some detail:

> Q      Okay. So up to 35 minutes each time you use the nebulizer?   Is that accurate?

> A      Yes.

> Q      All right. And are there times when you use it more than two or three times a day?

> A      Yes.

> Q      All right. And what's the most you use it on a given day?

> A      Five to six times.

PageID.83.

> After the VE identified other work which plaintiff could perform, his attorney asked

the VE on the work-preclusive effects of taking unscheduled breaks during the workday.

Q       If an individual had to take unscheduled breaks that were at least 30 minutes in nature at least once per day, but up to three or four times per day, would that eliminate the jobs you discussed today?

A       I believe so.

PageID.98-99.

The ALJ found that plaintiff's severe impairments included respiratory conditions of COPD/emphysema.  Based on the testimony, it appears that plaintiff's use of the nebulizer would be work-preclusive, *i.e.*, assuming that plaintiff used the nebulizer every six hours, he would have at least one 35-minute treatment during each 8-hour workday.  Given this record, the RFC should have accounted for these treatments.  Accordingly, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g).  On remand, the Commissioner should re-evaluate the RFC based on plaintiff's use of the nebulizer.

### C. The ALJ's finding that the claimant can perform jobs that exist in the national economy is not based on substantial evidence.

Plaintiff contends that the ALJ's decision was flawed because she never asked the VE "for a number of 'jobs in the national economy'."  Plaintiff's Brief at PageID.713.  Plaintiff's contention is without merit.  After the ALJ asked the VE to classify plaintiff's past work and posed a hypothetical question containing the RFC, the ALJ addressed whether plaintiff could perform other work in the national economy:

Q       Okay. That [the restrictions in the hypothetical question] fairly obviously rules out all his past work, am I correct?

A       Correct.

Q       And can you tell us, given his age, education, and vocational background, and those limitations, would other work exist in the national economy? And if so, provide us examples.

A      Certainly, if we looked at sedentary, SVP: 2, we could look at, let's look at unskilled clerical and that would be DOT code, document preparer would be DOT code 249.587-018, 40,000. We could look at new account clerk, DOT code 205.367-014, 50,000

Q      I'm sorry. My fingers tripped on the DOT code. Could you give me the DOT for that again, sir?

A      Certainly. New account clerk, 205.367-014.

Q      Thank you.

A      50,000. And information clerk which would be DOT code 237.367-046, 50,000. These are all unskilled, SVP: 2, sedentary.

PageID.95. Based on this testimony, the Court can infer that the VE was referring to the number of jobs in the national economy. Accordingly, plaintiff's claim of error is denied.

## IV.     CONCLUSION

For these reasons, the Commissioner's decision will be **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner is directed to re-evaluate plaintiff's residual functional capacity with respect to his use of a nebulizer. A judgment consistent with this opinion will be issued forthwith.


Dated:  September 15, 2022                    /s/ Ray Kent
                                              RAY KENT
                                              United States Magistrate Judge